IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILIANA PEREZ, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY INSURANCE COMPANY, a Wisconsin corporation,<br><br>    Defendant. | Case No. 1:20-cv-00996<br><br>Honorable Charles R. Norgle<br><br>Magistrate Judge Maria Valdez |

**AMERICAN FAMILY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff's claims stem from the tenuous legal theory that American Family's Policy[1] requires payment of the "actual cash value" ("ACV") of the insured vehicle in the event of a total loss; that "actual cash value" really means "replacement cost less depreciation" of the insured vehicle; and that Sales Tax and Fees are necessary and mandatory vehicle replacement costs in Illinois per the Illinois Administrative Code. (*See* Dkt. 25 at 2.) In the context of automobile insurance policies, Plaintiff is simply wrong.

In fact, recently the Seventh Circuit Court of Appeals rejected this legal theory and affirmed the dismissal of a similar class action lawsuit. *Sigler v. GEICO*, 2020 WL 4251699 (July 24, 2020). So, too, has this Court. *Pappas v. Auto Club Ins. Ass'n*, 20 CV 983, 2020 WL 3303004, at *5 (N.D. Ill. June 18, 2020) (dismissing similar class action lawsuit).

Plaintiff's Response to American Family's Motion to Dismiss concedes that the Policy does not reference the Sales Tax and Fees (Dkt. 25 at 5), and admits that the Sales Tax and Fees

---

[1] American Family has used the same capitalized, defined terms herein that appear in its Motion to Dismiss (Dkt. 17).

are associated with a replacement vehicle, and not her damaged Vehicle, (*id.* at 4). Moreover, Plaintiff ignores that her interpretation of ACV is an unreasonable interpretation of the Policy. Because neither the Policy nor Illinois law supports Plaintiff's contention that American Family was required to pay Sales Tax and Fees as part of her total loss payout, just as in *Sigler* and *Pappas*, the Court should grant American Family's Motion to Dismiss (Dkt. 17).

I.  **Plaintiff's ACV argument results in an unreasonable interpretation of the Policy, which Policy promises to pay for "Loss" to the insured Vehicle.**

Plaintiff misstates the extent of coverage provided by the Policy. The Policy does not, as Plaintiff claims, "promise[] that, in the event of a covered loss, Defendant will either: (1) have the insured vehicle repaired, or (2) pay the cost of repairs to the insured vehicle." (Dkt. 25 at 3.) Rather, American Family promised to pay for Plaintiff's "**loss**," less the deductible. (Dkt. 1-1 at 7) (emphasis in original). "**Loss**" is defined as the "direct and accidental damage to or theft of [the Vehicle]. **Loss** does not mean any difference in: (a) the market value of [the Vehicle] immediately prior to the **loss**; and (b) the market value of [the Vehicle] after repairs from the **loss** are completed." (*Id.* at 7) (emphasis in original). The Policy notes that American Family "may pay the **loss** in money, or repair or replace, stolen or damaged covered property." (*Id.* at 9) (emphasis in original). "Loss" does not include sales tax and title transfer fees.

The court's decisions in *Coleman v. Garrison Prop. & Cas. Co.*, No. 19 C 1745, 2019 WL 3554184, at *1 (N.D. Ill. July 31, 2019) (hereinafter "*Coleman I*") and *Coleman v. Garrison Prop. & Cas. Ins. Co.,* 19 C 1745, 2020 WL 489527 (N.D. Ill. Jan. 30, 2020) (hereinafter "*Coleman II*"), are analogous and instructive. In *Coleman I*, similar to Perez here, plaintiff "argue[d] that Defendants promised to pay her the 'actual cash value' for her totaled car, which she argue[d] includes sales tax and title transfer fees." 2019 WL 3554184, at *2. The court

granted the insurance company's motion to dismiss on two bases, the first of which is relevant to American Family's argument here. Judge Kendall explained:

> Plaintiff puts too much emphasis on the definition of 'actual cash value' in the policy. As Defendants point out, the policy states, that the 'actual cash value' of a comparable vehicle is the limit on Defendants' liability—not the amount that Defendants promised to pay her …. Defendants actually promised to pay Plaintiff 'for loss caused by collision,' which Plaintiff alleges as well. And 'loss' means 'direct and accidental damage,' which 'includes a total loss, but does not include any damages other than the cost to repair or replace.' ***Plaintiff does not point to any provision in the policy that requires Defendants to pay the 'actual cash value' of her car for a total loss—that term is clearly defined as the limit of Defendants' liability, not an amount they are obligated to pay***. Nor does she point to any provision that defines 'loss' or 'total loss' to include sales tax and transfer fees.

*Id.* (internal citations omitted) (emphasis added). Because plaintiff failed to plead the necessary elements of a breach of contract claim—namely, a breach—the court dismissed the suit. *Id.* at *4.

The *Coleman* plaintiff attempted to rectify her missteps in *Coleman II*. There, the court rejected many of the same arguments Perez makes in her Response (*see* Dkt. 25 at 3-5), namely that the insurance company promised to pay the ACV in the event of the loss, and that the insurance company is obligated to pay ACV because it "chose" to pay the ACV for plaintiff's total loss vehicle. 2020 WL 489527, at *3-4. Finding that there was "no language in the policy that obligates Defendants to pay 'actual cash value' for a total loss," and that plaintiff's allegations to the contrary were "conclusory and conflict[ed] with the plain language of the contract," *id.* at *3, the court dismissed plaintiff's claims with prejudice, *id.* at *4.

Likewise, the Seventh Circuit has rejected Perez's argument:

> This argument misconstrues a limitation of liability as a promise to pay. Put slightly differently, Sigler mistakes a liability ceiling for a floor. The Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the *most* that GEICO will pay in the event of a covered loss.

3

*Sigler*, 2020 WL 4251699, *2.

As in *Coleman II* and *Sigler,* dismissal is warranted here.

### A. Under the plain language of the Policy, ACV does not mean "replacement cost less depreciation."

Even if Plaintiff could show that the Policy required American Family to pay the ACV in a total loss settlement (she cannot), Plaintiff cannot demonstrate that ACV encompasses payment of the Sales Tax and Fees for a replacement vehicle. First and foremost, Plaintiff continues to ignore that her "loss," and American Family's duty to pay, is limited to the damaged Vehicle insured by the Policy.[2] Plaintiff attempts to avoid this inconvenient fact by repeatedly arguing that because ACV is not defined in the Policy, it must mean "replacement cost less depreciation." (Dkt. 25 at 5) (citation omitted). In doing so, Plaintiff cites to four cases involving the determination of actual cash value in the context of ***fire insurance policies***. *See Carey v. Am. Family Brokerage, Inc.*, 909 N.E.2d 255 (Ill. App. Ct. 2009) (business owner's policy—fire loss); *Gen. Cas. Co. v. Tracer Indus., Inc.*, 674 N.E.2d 473, 475 (Ill. App. Ct. 1996) (fire insurance policy); *Chicago Title & Tr. Co. v. U.S. Fid. & Guar. Co.*, 511 F.2d 241 (7th Cir. 1975) (fire insurance contract); *Smith v. Allemannia Fire Ins. Co.*, 219 Ill. App. 506, 513 (3d Dist. 1920) (fire insurance policy).

Indeed, Plaintiff's reliance on *Carey* is particularly misplaced. As the court in *Coleman II* noted, the policy in *Carey* "'specifically provide[d] that the loss … [wa]s to be measured on an actual cash value basis.'" *Id.* at *3 (quoting *Carey*, 909 N.E.2d at 258). In other words, "the policy in *Carey* explicitly promised to measure loss and damages using 'actual cash value'"

---

[2] For this reason, Plaintiff's criticism of American Family's heading on page 4 of its Motion to Dismiss is unpersuasive. (Dkt. 25 at 4.)

4

whereas here, American Family's Policy uses the term "actual cash value" only "as a limit on [American Family's] liability." *Id.*

Moreover, *Carey* involved a claim for fire damage to a residential apartment. Nothing in *Carey* suggests that Illinois law equates "actual cash value" with "replacement cost" outside of the context of unique real estate. The Illinois Administrative Code specifically states that when determining settlements of residential fire claims—such as the one at issue in *Carey*—insurers must determine "actual cash value" by looking at the "replacement cost of the property at time of loss less depreciation." 50 Ill Admin. Code § 919.80(d)(8). Needless to say, no such rule applies to automobile policies.

In fact, Plaintiff failed to recognize that Illinois Department of Insurance regulations govern automobile total loss claims such as this one. *See generally Crandall v. Country Mut. Ins. Co.*, 400 N.E.2d 1100, 1103 (Ill. App. Ct. 1980) (also noting that the Illinois Supreme Court "has held that 'actual cash value' and 'fair cash value' are practically synonymous") (citation omitted); *Fassola v. Montgomery Ward Ins. Co.*, 433 N.E.2d 378 (Ill. App. Ct. 1982). These detailed regulations, 50 Ill. Adm. Code 919, *et seq.*, set forth mandatory claim practices for automobile insurers in the adjustment and settlement of motor vehicle insurance claims. Under Section 919.80(c), in the event of a total loss, the insurance company can either replace the vehicle or pay a cash settlement based on the market value. *Pappas,* 2020 WL 3303004, at *5; 50 Ill. Admin. Code § 919.80(c)(1) & (2). Section 919 is incorporated into and considered part of the Policy. *See Kapinus v. State Farm Mut. Auto. Ins. Co.*, 738 N.E.2d 1003, 1005 (Ill. App. Ct. 2000) (it is undisputed that "when an insurance policy is issued, applicable statutory provisions in effect at the time are treated as part of the policy") (citation omitted); *see also Moran v. Rush*

*Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir. 2000) ("Illinois laws automatically are incorporated into all contracts of insurance in that state").

Here, the reference to "actual cash value" in the Policy means the market value, or cash settlement, option provided by Section 919.80(c)(2). Indeed, American Family limited its liability to the least of:

a) The actual cash value of the stolen or damaged property; or

b) The amount necessary to repair or replace the property. The amount necessary to repair or replace the property does not include any difference in the market value of [the Vehicle] immediately prior to the **loss** and the market value of [the Vehicle] after repairs from the loss are completed.

(*Id.* at 9) (emphasis in original). The Policy clearly refers to "actual cash value" and the cost to "replace" the Vehicle as *distinct valuations.* Construing "actual cash value" to mean "replacement cost less depreciation" would render the latter liability limitation clause superfluous, and Illinois law forbids such a result. *See Atwood v. St. Paul Fire & Marine Ins. Co.*, 845 N.E.2d 68, 71 (Ill. App. Ct. 2006) (rejecting, as a matter of law, proposed interpretation of an insurance policy that "offends [the] well-settled principle of contract construction [that] a contract must not be interpreted in a manner that nullifies provisions of that contract") (collecting cases). In fact, courts have repeatedly rejected Plaintiff's proposed construction. *See Pieczonka v. Progressive Select Ins. Co.*, No. 19-CV-2965, 2020 WL 1930134, at *2 (N.D. Ohio Apr. 21, 2020) (although acknowledging that the cost to replace the damaged vehicle "might cover the costs of title, registration, and licensee fees," the court found that "reading those fees into the actual cash value would negate any difference between the two," making the reference to replacement costs "redundant"); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867, 870-71 (W.D. Wis. 2019) (actual cash value did not include replacement costs such as taxes and fees where the policy "expressly distinguishe[d] between the [actual cash value] … and a

6

replacement amount by stating that [the insurer] may pay the *lesser* of the two in the event of a total loss").

Under the unambiguous terms of the Policy, American Family promised to pay for Plaintiff's "loss"—and not the ACV of the Vehicle. Moreover, Plaintiff cannot point to any provision in the Policy that defines "loss" to include the Sales Tax and Fees, and Plaintiff's proposed definition of ACV is neither supported by Illinois law or logic. For this reason, American Family's alleged failure to pay the Sales Tax and Fees cannot amount to a breach of the Policy. Plaintiff's Complaint must be dismissed.

> **B.    Case law does not support that the ACV provision in the Policy includes a promise to pay Sales Tax and Fees.**

The "overwhelming case law" Plaintiff claims supports her position that ACV encompasses Sales Tax and Fees, (Dkt. 25 at 4 n.3), is neither controlling nor analogous.

The cases *Davis v. GEICO Cas. Co.*, No. 2:19-cv-2477, 2020 WL 68573 (S.D. Ohio Jan. 7, 2020), *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-Civ, 2018 WL 3412852 (S.D. Fla. Jun. 14, 2018), and *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. 2015), all involved insurance policies that defined ACV as "the replacement cost of the auto" or "insured vehicle," or the "amount it would cost, at the time of the loss, to buy a comparable vehicle." *Davis*, 2020 WL 68573, at *1; *Roth*, 2018 WL 3412852, at *4; *Bastian*, 150 F. Supp. 3d, at 1289. Plaintiff's Policy does not contain any such definition. Here, as discussed in detail above, the Policy adopted the market value or cash settlement definition of ACV, and Plaintiff was paid accordingly.

*Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 134169, at * 2 (S.D. Ohio Jan. 13, 2020), is similarly unpersuasive, as the insurance policy at issue did not define "loss" or "ACV."

7

In this case, the Policy defines "loss," such that it is limited to the damaged Vehicle—and not any costs for a replacement vehicle. (*See* Dkt. 1-1 at 7.) Given this definition, as well as American Family's adoption of the "market value" definition of ACV, the ambiguities at issue in *Ostendorf* simply are not at issue here.

*Sos v. State Farm Mutual Auto Ins. Co.*, 396 F.Supp.3d 1074, is similarly inapplicable. *Sos* considered a method for the valuation of leased vehicles—which is not at issue in this case. *Id.* at 1077. The *Sos* court's conclusion that "actual cash value" meant "replacement cost less depreciation," was based on prior Florida cases interpreting "actual cash value" when it was not defined in an insurance policy. *See, e.g., id.* at 1080.

Moreover, in determining what components are included in the replacement cost of a total loss vehicle, the *Sos* court looked to Florida law for what costs are mandatory for the replacement of a vehicle. *Id*. Because the *Sos* court equated "actual cash value" with "replacement cost less depreciation," and Florida "impose[d] mandatory sales tax and title transfer fees for the replacement of all vehicles," the court found them to be components of "actual cash value" under the applicable policy. *Id.* at 1080-81. (relying upon *Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008), which "interpreted an insurance policy that defined actual cash value as the cost to repair or replace property with new materials of like kind and quality, less depreciation.") It bears repeating that American Family does not define "actual cash value" in such a fashion. Accordingly, *Sos* is neither factually similar nor instructive.

*Graves v. Mendakota Casualty Company*, Case No. 19 CH 5372 (June 6, 2020, Cook County Chancery Division), upon which Plaintiff so heavily relies as support for the proposition that ACV includes Sales Tax and Fees, is an Illinois state trial court decision, and, therefore, is not binding on this Court. *See Williams, McCarthy, Kinley, Rudy & Picha v. Nw. Nat. Ins. Grp.*,

8

750 F.2d 619, 624 (7th Cir. 1984). Further, while *Mendakota* is factually similar to this case, had the *Mendakota* court considered *Sigler* and *Pappas,* American Family submits that it would have been decided differently. The Mendakota court did not have the benefit of these decisions, both of which were issued after the *Mendakota* Order. Similarly, it does not appear that the court considered *Pieczonka*, which was decided after the parties submitted their respective briefs. American Family notes that because of the decisions in *Sigler* and *Pappas*, the insurer has asked the Chancery Court to certify questions of law pursuant to Ill. Sup. Ct. Rule 308, or in the alternative, to reconsider the June 6 Order. A true and accurate copy of Defendant's Motion for a Rule 308 Certification or, in the Alternative, to Reconsider the Court's June 6, 2020 Order, filed on July 29, 2020, is attached hereto as **Exhibit 1.**

Moreover, the *Mendakota* court relied on an overly simplistic analysis. It based much of its decision on the fact that the insurance policy did not define "actual cash value," and, thus, was ambiguous. (*See* Dkt. 25-1 at 7-10.) In doing so, it failed to appreciate the distinction made in the *Coleman* decisions—that the court need not reach the analysis of whether ACV includes Sales Tax and fees because there was no reason to do so.[3] The ACV provision—however it is interpreted or defined—simply is not a promise on the part of the insurer to pay the insured, as Judge Kendall explained:

> Defendants never promised to pay Plaintiff the 'actual cash value' of her vehicle. As the policy makes clear, 'actual cash value' is the limit of Defendants' liability for total loss—not the amount it promised to pay in the event of total loss.

*Coleman II*, 2020 WL 489527, at *4 (citations omitted).

Plaintiff either ignores (*Pieczonka*, *Thompson*, and *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 338 (5th Cir. 2020)), or fails to meaningfully distinguish (*Coleman* and *Sigler*) the

---

[3] For this reason, Plaintiff's attempt to distinguish *Sigler v. GEICO Cas. Co.*, No. 1:18-cv-01446-MMM-JEH, 2019 WL 2130137 (C.D. Ill. May 15, 2019), is unpersuasive, and the Seventh Circuit's recent opinion binding.

numerous federal courts to have considered contract language similar to that of the Policy and found that ACV unambiguously did not include sales tax and replacement fees. *See also Pappas*, 2020 WL 3303004, at *3 (rejecting plaintiff's contention that "actual cash value includes all of the fees an owner would have to pay to make the vehicle legal to drive in Illinois"). And contrary to Plaintiff's claim (Dkt. 25 at 5-6), an insurance policy does not need to exclude coverage for something that it does not cover:

> Sigler argues that the policy's "silence" on whether he is entitled to payment for taxes and fees he did not incur should be interpreted in favor of coverage because GEICO cannot point to unambiguous language that excludes these particular costs. That gets things backward. Analysis of exclusions does not come into play unless these costs are encompassed within GEICO's basic coverage grant in the first instance; an insurance policy does not need to exclude coverage for something that it does not cover to begin with. *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 779 (7th Cir. 2015).

*Sigler,* 2020 WL 4251699, *2. Because American Family provided coverage to Plaintiff in accordance with its Policy, her Complaint should be dismissed.

## II. The Illinois Administrative Code does not require American Family to pay Sales Tax and Fees to Plaintiff.

Plaintiff's argument that the Administrative Code sets the "minimum regulatory requirements," and that American Family's Policy *exceeds* those minimum requirements, is both unsupported by the Policy and without merit. (Dkt. 25 at 12-13.) Plaintiff cannot identify any provision in the Policy which promises to pay Sales Tax and Fees—because the Policy never once mentions taxes or fees—let alone promises to exceed the obligation set forth in Section 919.80.

Here, any obligation to pay taxes and fees in the settlement of total loss claims arises solely from Illinois Administrative Code Title 50 Section 919.80. And pursuant to Section 919.80, American Family is only obligated to pay Sales Tax and Fees in settlement of total loss

claims if the insured (1) purchases or leases a vehicle within 30 days of the total loss settlement, and (2) submits appropriate documentation of the Sales Tax and Fees incurred with respect to the purchase or lease. 50 Ill. Admin. Code § 919.80(c)(3)(A)(i); *see also Safe Auto Ins. Co. v. Kanyara*, 2015 IL App (1st) 140982-U, ¶ 14 ("the insurance regulations simply provide that if a consumer actually purchases a replacement vehicle 'within 30 days after receipt of the settlement' then the insurer must pay the sales tax and transfer and title fees").

Plaintiff's contention that the Illinois Administrative Code required American Family to simply pay sales tax based on the cost of the Vehicle, at the time of settlement, is unconvincing. (Dkt. 25 at 12-13.) Although an insurer may elect to pay taxes and fees at the time of the total loss claim settlement under Section 919.80(c)(3)(A)(i), this provision is permissive and contemplates that the insured has actually purchased or leased a replacement vehicle or plans to do so contemporaneously with the claim payment by the insurer—*i.e*., the only occasion on which "the company is *required* to reimburse the insured for the applicable sales taxes and transfer and title fees." *See* Ill. Adm. Code § 919.80(c)(3)(A)(i) ("In lieu of this reimbursement procedure, the company *may* directly pay *the required* amounts of sales taxes and transfer and title fees to the insured at the time of settlement.") (emphasis added).

The *Sigler* decision is comparable and instructive. In *Sigler*, as here, the plaintiff alleged that the insurance policy's "agreement to pay the actual cash value of his automobile in the event of a total loss is a promise by Geico Casualty to pay what he considers to be the mandatory vehicle replacement costs as part of its coverage," including sales tax and title and transfer fees. 2019 WL 2130137, at *1. Plaintiff alleged that Geico breached this promise by "forc[ing] its insureds to first replace the vehicle, and then separately apply for the payment of replacement taxes and fees, before Geico will consider these replacement costs." *Id* at *3. In rejecting this

11

argument, the court held that Section 919.80 applied to plaintiff's claims, and that plaintiff had failed to adequately allege that he met the requirements of the regulation to plead a breach of the insurance policy. In doing so, the court explained:

> The Plaintiff never claims that he incurred sales tax, title transfer fees, or tag transfer fees expenses in the wake of settling his total loss claim. Therefore, the Defendants are under no obligation to pay such taxes and fees. This obligation only arises for insurers after actual cash settlements when the insured has purchased or leased a vehicle. Ill. Admin. Code tit. 50, 919.80(c)(3)(A)(i).

*Id.* at *3. In affirming this opinion, the Seventh Circuit held:

> The use of the word "reimburse" is telling. The regulation mandates payment of these costs if and only if the insured (1) has purchased or leased a vehicle within 30 days of receiving a cash settlement and incurred applicable sales taxes and fees and (2) substantiates the purchase and payment of those taxes and fees by submitting appropriate documentation to the insurer within 33 days after the receipt of the settlement. To be sure, an insurer may contractually obligate itself to pay these costs without substantiation; the regulation states that "[i]n lieu of" the above-described "reimbursement procedure," an insurer "may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." Id. (emphasis added). But "may" is a permissive term, and permissive statutory or regulatory language, by definition, does not command anyone to do anything.

2020 WL 4251699, *3. The Seventh Circuit also recognized that the Illinois Administrative Code is incorporated into auto insurance policies:

> As a last resort, Sigler argues that the regulatory conditions on reimbursement do not apply unless the insurance policy unambiguously opts in to the payment regime established in section 919.80(c)(3)(A)(i). That's a nonstarter. As we explained, the regulation is incorporated as a term in the policy as a matter of law. An insurer may contract to provide coverage above the default floor specified in the regulation, but it must do so expressly. See *Brandt v. Time Ins. Co.*, 302 Ill.App.3d 159, 235 Ill.Dec. 270, 704 N.E.2d 843, 851 (1998) ("By entering into a contract, and by not excluding or modifying the effects of the various laws, the contracting parties are deemed to have accepted these laws as part of their agreement."). GEICO did not do so.

2020 WL 4251699, *3. Nor did American Family.

Here, American Family's actions are consistent with both *Sigler, Pappas* and Section 919.80(c). Because Plaintiff's Complaint is devoid of any allegation that she incurred Sales Tax or Fees, or that she provided proof to American Family of the same within the designated time, (*see generally* Dkt. 1), her claims must fail. For this separate, but equally compelling reason, Plaintiff's Complaint should be dismissed.

### III. Plaintiff is not entitled to injunctive *and* breach of contract relief in this case.

Plaintiff completely fails to address American Family's argument that, at a minimum, it is entitled to dismissal of Count II of the Complaint, which seeks injunctive relief. Plaintiff does not dispute that "Illinois courts have consistently held that money damages are the appropriate remedy for breach of contract," or that "[i]njunctive relief is disfavored where the gravamen of a complaint is breach of contract and the trial court could award damages if a breach occurred." *Illinois Beta Chapter of Sigma Phi Epsilon Fraternity Alumni Bd. v. Illinois Institute of Technology*, 946 N.E.2d 1118, 1122 (Ill. Ct. App. 2011) (citations and quotations omitted). Moreover, Plaintiff completely fails to address the Seventh Circuit's decision in *Kartman v. State Farm Mut. Auto Ins. Co.*, 634 F.3d 883 (7th Cir. 2011), which holds that where an insured claims that her insurer has failed to fully compensate her for an insurance claim, a claim for money damages for breach of contract—not a claim for injunctive relief—is appropriate.

Instead, Plaintiff generally claims that she is entitled to plead alternative claims for relief, and that claims for declaratory relief are appropriate in class actions. (Dkt. 25 at 16.) That may be true, generally. However, Plaintiff does nothing to dispute the fact that her only remedy for American Family's alleged underpayment is a breach of contract claim for monetary damages. *See Kartman*, 634 F.3d at 889-90. Because Plaintiff's claim for underpayment sounds in contract *only*, at a minimum, Plaintiff's request for injunctive relief (Count II) should be dismissed.

13

## CONCLUSION

Perez's Class Action Complaint must be dismissed. Neither Illinois law, nor Perez's Policy, requires payment of Sales Tax or Fees as part of an ACV payout for a total loss vehicle. Moreover, Perez's claim for underpayment is one for breach of contract only—Illinois law does not allow for injunctive relief in these circumstances. Because Perez's claims fail as a matter of law, American Family respectfully requests that the Court grant its Motion to Dismiss (Dkt. 17) in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: July 31, 2020                                Respectfully submitted:

**AMERICAN FAMILY INSURANCE COMPANY**

BY:    /s/ *Adam Arceneaux*
       Adam Arceneaux
       One of Its Attorneys

Adam Arceneaux
Judy S. Okenfuss
Isaac J. Colunga
**ICE MILLER LLP**
200 West Madison Street
Suite 3500
Chicago, IL 60606
(312) 726-7157
adam.arceneaux@icemiller.com
judy.okenfuss@icemiller.com
isaac.colunga@icemiller.com

*Counsel for American Family Insurance Company*

## CERTIFICATE OF SERVICE

  The undersigned, an attorney, states that on July 31, 2020, he caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois, and thus a copy of this pleading will be served on all counsel of record by the Clerk's CM/ECF system.

                /s/ *Adam Arceneaux*
                Adam Arceneaux

**ICE MILLER LLP**
200 West Madison Street
Suite 3500
Chicago, IL 60606
(312) 726-7157
adam.arceneaux@icemiller.com

I\15544571.3